Please be seated. Thank you. Madam Clerk, please call the first hearing. 113-0259, Slobo Mayor Duda v. Krugelkampels. Counsel, you may approach. Good morning. May it please the Court? Mr. McAuliffe. My name is Matt Belcher and I represent your injured worker, Slobo Mayor Duda. Mr. Duda respectfully takes exception to the findings and conclusions of the Industrial Commission that the injured worker failed to provide any notice of any industrial injury to the employer, thereby depriving the Commission of jurisdiction to consider the merits of his claim. The injured worker also respectfully takes exception to the then hypothetical and conclusory findings that the petitioner's present state of well-being is not causally related to his work activities, nor was there an accident. There is no dispute that Mr. Duda needs surgery to remove a now symptomatic ganglion cyst from his wrist that is impinging on his hand that prevents him from doing his job as a mason. The dispute before this Court is that the Commission concluded it lacked jurisdiction over the claim. Mr. Duda has been a mason for 14 years. His first language is not English. It is Polish. He speaks occupational English only. I'd like to clarify one thing before we begin. Mr. Duda informed his manager that his hand injury prevented him from working. However, should anyone claim that Mr. Duda said, I did not hurt my hand at work, that would be inaccurate. Mr. Duda said there was not a specific incident. There is no equivalence between I did not sustain a specific incident of injury and I did not hurt my hand at work. Essentially, all repetitive trauma injuries have a breaking point. When the worker can no longer perform their job, to reach that breaking point is not always a specific, discreet, traumatic event, but it remains nonetheless a compensable accident. The arbitrator failed to conceptualize this important distinction. Whether due to distraction or inadvertence, it was the first domino that led to the denial of all the meritorious claims of this case. The arbitrator perceived Mr. Duda's description of his breaking point of a repetitive trauma injury as a claim of a specific traumatic incident. That was a mistake. He then went on a hunt through the medical records looking for evidence of this specific traumatic incident. Who's Dr. Popersky? Dr. Popersky is a treating orthopedic surgeon. That's the claimant's treating physician, correct? Yes, Justice Hudson. And did he opine that the claimant's work activities of placing bricks and tamping them down were consistent with the development of the condition? That was the extent of his opinion, right? When he says the development of his condition, he means that the ganglion cyst became symptomatic. It might not necessarily cause it, but that repetitive trauma will in fact cause it to become symptomatic. And Dr. Pomerance is who? Dr. Pomerance is the Section 12 examiner retained at the expense of the employer. And obviously he gave an opposite opinion, correct? Not exactly. Well, what did he state? He said that ganglion cyst may be degenerative. Nobody asked him can a previously asymptomatic degenerative ganglion cyst become symptomatic by repeatedly tamping with your dominant hand. So why isn't this a case of conflicting medical opinions? Because the Court didn't have jurisdiction or the Commission didn't have jurisdiction to consider any of the issues once they concluded that there was no notice. If the Commission perceives itself as having had notice in order to have jurisdiction Where did you raise the jurisdictional issue in your brief? You claim that we have jurisdiction. Yes. Page 21. Page 21, Justice Harris pointed out for me. I appreciate that. The point is that once the Commission concluded that it didn't have jurisdiction, any finding thereafter is merely dicta. Well, why can't it make an alternative finding? Number one, we don't have jurisdiction. But if we do, by the way, you didn't prove your case. Because if we look at the reasons why they reached these conclusions, we find that there's no merit to them. Hold on. Hold on. Hold on. That's two separate issues. No merit has nothing to do with jurisdiction, sir. I just thought you were correct. If you can't turn around and say that the Commission has no right to make an alternative disposition, there's no notice, therefore we have no jurisdiction. But, oh, by the way, if there is, you didn't prove your case. So you don't recover under either case. Why can't they do that? I imagine that they could. Well, if they could, then why didn't they have jurisdiction to make these findings based on Dr. Pomerantz's opinions? I'll demonstrate. Please do. Yes, Justice Hoffman. If we look to the reasons as to why the Commission concluded that there was no causal connection and no accident, we have four. Number one, petitioner testified about a specific incident on November 11, 2010. That's not right. There is no specific incident. There is no specific traumatic event. Number two, similarly, the petitioner's testimony as to moving 100 to 300 bricks per hour is not credible. That is an inadvertent finding. Otherwise, it's just completely not covered in the facts. What Mr. Duda said in his description of the various activities that he performed, including on the day of the manifestation of his cumulative trauma condition, he was using an electric hammer to remove bricks. Nobody said the gentleman sat there for 10 hours a day and laid bricks. These are the questions right here. Page 304 of the record. I'm asking Mr. Duda these questions. I know you have a crew and that there are three people on the crew. Answer yes. Question. And you work alongside the other crew members, right? Answer yes. Okay. When you're laying bricks, do you lay more than 10 per hour? I'm asking this question because someone told Mr. Pomerantz or Dr. Pomerantz that my client was a supervisor or a crew leader and didn't work. But that's not accurate. I want to get to something. Maybe I'm missing something. But I believe the exact quote from Dr. Pomerantz was that your claimant's ganglion cyst was, quote, degenerative in nature and that his ulnar nerve instability was a congenital development, a developmental condition, and not due to his work. That's what Pomerantz said. The creation of it, not the aggravation of it. The creation of a ganglion cyst may be degenerative. Likewise, a person might have an eggshell head. That doesn't mean that they can't have a work-related accident that then makes it symptomatic when it's previously asymptomatic. But if I might just develop the point regarding the bricks. So back to page 305 of the record, the question is when you're laying bricks, do you lay more than 10 an hour? Yes. The reason why this is important is because he's not just a leader. He's a worker. And then do you lay, I ask this question, do you lay 50, 100, 150 an hour? He says between 100 and 300 bricks sometimes. So I'm no genius, so I looked up what the word sometimes means, and it means on occasion, sometimes. Did Dr. Perpersky say that the laying of the bricks were consistent with, quote, the development of his condition? The aggravation of his condition. I have a quote around the word development here. Am I wrong? Development, aggravation. No, no. Am I wrong? Did he say development or didn't he? I believe you're right. He did say development. So if he says that the man developed a cyst because of his work, and Pomerantz says he didn't, and the commission agrees with Pomerantz, why is that against the manifest way to the evidence? Because nobody asked Dr. Pomerantz. The next question is if he has a degenerative ganglion cyst consistent with your opinion, may it be aggravated by repetitive trauma? The better question is did anyone ask Dr. Perpersky that question? They did not. They did not? I mean, not exactly. But he does opine that this, the following task can cause it to become symptomatic. And I'm going to demonstrate in just one second. So if I could just to go over. Just for the sake of the argument, is the commission supposed to fill in the gaps in their testimony? Justice Hudson, you're correct. They're not. But if we look at the, if I may lay out the four bases for their opinion. The first one was that he testified that there was a traumatic incident, which we've addressed. He didn't say that. He said that his hand hurt doing his job. He never claimed that he had a traumatic incident. The misapprehension of that testimony created a problem. So the second basis for the finding is that he claimed that he moved 100 to 300 bricks per hour. We've already addressed that. He never said that. He said sometimes. They weren't doing production work that day. They were doing removal that day. We know because he was removing bricks with an electric hammer. That's a misunderstanding of the record. And very importantly, here we go. The third basis. The arbitrator also notes, and the commission adopted this decision, you know, in toto. The arbitrator also notes that while complaining of a right-hand injury during his demonstration at trial, Petitioner was lifting and moving the bricks with his left hand. Why is that the most important part of the case? Because it demonstrates that the arbitrator is not paying attention. When he, you lift, and he's never laid brick. You lift a brick with your non-dominant hand. You pick up the brick. You take a trowel in your dominant hand. You put mortar, you butter it on the brick, and you butter it where the brick lays. You lay the brick down, and then you tamp it with your dominant hand. And where is this information coming from? Is this in the record? Yes, Judge. Okay. And that's what Dr. Kopierski demonstrates, saying, well, even if it's degenerative, that could cause the aggravation. His dominant hand was? His right hand. And so it's in the, Justice Hudson, it's in the record on page 304, I believe. It's 44, the trial transcript. And once the old brick is gone, do you install a new brick? Answer, yes. Question, is it one hand or two job? Two hands. Could you show the judge how you do that? Can I use this? He says to the judge. The judge says yes. He picks up the advice. I have a spatula in my other hand. I apply the mortar. I place the bricks. And then I place it there, and I place it on the wall, and I have to tap it or set it into proper place. It is the tapping with the dominant hand, his right hand, that's caused this aggravation. What I don't understand about this is the commission knew all this. And yet the commission said we're following Pomerantz, and we're suggesting that the injury was not causally related to his employment. And it was the unanimous commission that affirmed it. So you had an arbitrator, three commissioners, and now the circuit court, and you can't retry your case in front of us. I mean, you presented that to the commission. The commission rejected it. Is that not the case? That is the case. But if I laid out the four bases for why the commission ---- I understand what you're saying. You're saying the commission misinterpreted the evidence. Is that the gist of what you're saying? Correct. And it's clear from the record they did. If they think that the gentleman lacks credibility because he used his right hand, he used his non-dominant hand to move the brick, that means that you don't understand what the testimony is. If you go searching through the records and you conclude that I can ---- I find that this gentleman is not credible because the records don't indicate that there was a specific traumatic incident. He didn't say there was a specific traumatic incident. He said that there was ---- he reached the breaking point for a repetitive trauma issue when the problem began in October. He showed ---- can we just address notice really fast? Just ---- I mean, if you talk about clarity of mistakes, it seems to me that it's ---- does anybody think that the man didn't give at least effective notice of his incident? Does anybody think that he didn't at least provide them with some notice of this accident? Does anybody? Yeah, the commission. Well, I'm going to demonstrate to you that you're more important than somebody. Anyway, the purpose of the notice requirement is to enable the employer to investigate the employee's alleged industrial accident. This is what ---- this is from White v. Illinois Workers' Compensation Commission, which the arbitrator then the commission by adoption found to be instructive because apparently Mr. Duder failed to give any notice. So was there no notice? Let's see. No notice except his contemporaneous report to the manager at work the next scheduled day that I cannot perform my work because my hand hurts. No notice except that when he brought his work restrictions to his employer, she filed a workers' compensation claim with her insurance carrier on November 29th. I don't think notice is your problem. Notice is not your problem. Your problem is causation. Okay. So if it's clear that the commission made a mistake on notice, and I have more incidents of where ---- Because they made a mistake on notice, they also made a mistake on causation. Because it's different. It follows logically. Well, one mistake, I think there's a Latin saying, if you find one mistake, you might find another mistake as well. If it's in the body of law, we can avoid it. Is there some case that says that? Well, there's a case that ---- Remember Agnes Grubel? It's a decision written by Justice Hudson. And in that case, there was a woman who worked for the Sun-Times, but she had an independent contractor agreement with a company called 4M. She's going around distributing newspapers, and the commission said there's no employment relationship. Oh, and by the way, she didn't have an accident. Justice Hudson, in his report, said they found that to be cryptic and conclusory, saying that once they reach the point that there's no support in the ---- What does that have to do with this case? In the same instance here. Commission made a mistake. Does anybody think that the commission didn't make a mistake on notice? Well, you may think they made a mistake by relying on Justice ---- Dr. Pomerance is what you think they made a mistake. Well, I'm saying that once we've reached the point that they've reached, that they concluded they have no jurisdiction. Anything that transpires after that is dictum. No, it is not. I mean, you know, just get off that. That is ridiculous. It's alternative. They addressed the notice issue, and quite frankly, I think they were wrong on the notice issue. But then they also addressed the causation issue. Why can't they do that? There's a case citation in here that provides that once a court just ---- it's a trial court. Once a trial court concludes it has no jurisdiction, anything that comes afterwards is dictum. And what case is that? Dysonrock v. Dodge. Justice Harris, I think you might be correct. It's probably true, by the way, if they were correct on the jurisdictional question. It is not true if they're wrong on the jurisdictional question. But if so, if they made a mistake, then they get the benefit of the doubt? No, there's no benefit of any doubt.  If a court says ---- Justice Alito, excuse me. I'm talking now. If a court says we have no jurisdiction and they're correct and then proceeds to decide issues, you're right. Everything they say is dictum. It's useless. But if a court says we don't think we have jurisdiction, but oh, by the way, if we do, this is our decision, and it turns out they do have jurisdiction, then what they say is not dictum. Okay. I accept what you're saying. But I submit to you that it's against the manifest way of the evidence. Because I set forth the four bases for the reason that they reached this conclusion. Your time is up. Thank you very much. Where is your appendix? Is there an appendix filed separately? We don't have it up here. Do you have an appendix? I'm sorry? Do you have an appendix that was filed with the case? You know what? I'm not certain of the top. Well, don't you think it would be if we do? No, he's got an appendix. Do we have a copy of the decision of the commission, the arbitrator? Yes. Okay. Very good. Brian does not show that. Okay. You'll have time on the fly. Good morning. May it please the court, counsel. My name is Andrew McCaskiss, and I represent Respondent Krupa Pablos in this matter. The decisions of accident and causal connection that were made by the arbitrator, by the commission, by the circuit court, were not against the manifest way of the evidence. A lot of this has to do with credibility of the petitioner. The petitioner gave the report a statement in this case, told the interviewer at the time initially that he had no idea how many pieces and parts he moved at a particular time, and then at trial testified that he'd do 100 to 300 bricks per hour. What does that mean, do 100 to 300 bricks per hour? I did a placement of bricks installation. How do you infer that? Is that what he actually said? That's my reading of that, yes, Your Honor. You're reading, but aren't they in the business of taking old bricks out and replacing bricks? They are. And that's part of the description of the job that was made by his supervisor, Jacob Schneider, as discussed in the job description. But the testimony as to 100 to 300 bricks per hour had to do with the installation. And that's part of the argument and part of the credibility issue. There's 1,000 to 3,000 bricks on this job. And for him to come into court and say that he's installing 100 to 300 an hour on a job that went for four months and still wasn't done and was being worked on by three people, it doesn't add up. So he talks about laying bricks. Correct. Correct. I understand that your opponent, I'm sure you were listening, called your attention to specific points that he says the commission clearly misinterpreted the evidence. Can you respond to those points? Absolutely. As far as the 100 to 300 bricks per hour, the supervisor testified that it's not that, it's not anywhere close to that. The job description that was provided to Dr. Pomerantz, which was not provided to Dr. Papirsky, is consistent with that. The job description says masonry crew leader, which is what Mr. Duda was. He was a worker, and that was part of the job. But the argument that, oh, Pomerantz thinks he's a supervisor and he's got the wrong job description, that's not right. He's a working masonry crew leader performing work consistent with what Mr. Schneider testified to and what is set forth in the job description that was reviewed. Okay. So on that point, you're saying that his testimony is contradicted. It's refuted. Absolutely. Okay. Go ahead. Absolutely. As far as specific incident is concerned, well, they're kind of trying to argue that on both sides of his mouth. In his initial statement, he says there was no specific trauma. But at trial, he says, I'm using an electric hammer, and suddenly I've got a pain in my right hand that is so great that I almost start crying. That's his testimony. Well, now, when there's no finding of specific incident, we're not arguing specific incident. We're arguing repetitive trauma. Well, they've both been addressed. And a lot of it has to do with the fact that the story changes with this petitioner on a few occasions. The reliable evidence as it pertains to the job and what it involves, et cetera, is the stuff that Schneider talked about and Dr. Pomerantz reviewed. And there's plenty of legitimate evidence for which the arbitrator and the commission relied upon. The decision is not against the manifest way. Thank you. Thank you, counsel. Counsel may reply. He's a worker. Sometimes they lay 100 to 300 bricks. It has nothing to do with when. When did you lay 100 to 300 bricks? The day that the onset of this condition? No. Obviously, he's using an electrical device to remove bricks. He never said this idea that we engage in this cryptic calculation of how many hundreds of bricks that these people can lay really has no relationship to the facts of this case. The gentleman said that when he lays bricks, he lays 50 to 100, sometimes 100 to 300. Sometimes. The idea that we're going to engage in a calculation of there's 3,000 bricks here, we divide it by the three men, and he should have done the work himself. I have a question. When you're saying that specific language, when he lays bricks, will we find that? The testimony on page 305 of the record, which is page 45 of the trial transcript, says that he as a crew works alongside the other crew members. And then it begins with this. A question by me to Mr. Duda. When you're laying bricks, do you lay more than 10 an hour? Answer, yes. Question. Do you lay 50, 100 an hour, 150 an hour? Answer. Between 100 to 300 bricks, sometimes. Question. So there's different, you have different parts of your job. Answer, yes. Question. When you're removing bricks, you're using electrical tools, and when you're replacing the bricks, you're using both hands to build them back. Answer, yes. Question. You do this for 10 hours a day? Answer, yes. The gentleman doesn't say that he's laying 300 bricks an hour for 10 hours a day. At this job site. When they do, because this is a remodel. In the beginning of the transcript, we draw a distinction between production, which means you're building a brand-new building. When you build a brand-new building, you've got a row of masons, and they lay brick all day long. The key is what your argument is. It's when you lay bricks. When you lay bricks. Okay. How many can do it? So you're saying that the arbitrator misjudged the context and made it job-specific. This is a general question about what bricklayers do when you work for Krugelkoppel in November of 2010. The commission then goes on to have four bases for concluding that this gentleman didn't have an accident. And one is that they can't find any record of this traumatic incident. But I assert to you there was no traumatic incident. It's an on, it's a breaking down based on repetitive trauma. Number two, the notion that he claimed that he could do 100 to 300 bricks, and then  The third basis for concluding he has no credibility is that he's using his non-dominant hand to move the bricks. But I already explained to you, that's the way that you do the job. And so for, and then they concluded he had no notice. And yet they took his, you heard it, they took his recorded statement before he had a lawyer, before 45 days. So how do they have no notice of this accident when the gentleman not only had the opportunity to investigate the claim, they took his recorded statement, they sent their claim information to his doctor, they obtained his medical records, and they denied the claim. There was an application for adjustment of this claim filed on the 45th day. I submit to you that there's a domino effect of one error creating a bunch of other errors, and it all results from a misapprehension of the trial testimony. So I respectfully submit to you that the commission needs to be reversed. And I thank you very much for your time. Thank you, Counsel Ball. This argument will be taken, this matter will be taken under advisement. A written disposition shall issue.